RENDERED: APRIL 19, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0447-MR

KIMBERLY ROGERS                                                      APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.         HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 22-CI-02508

ERIE INSURANCE EXCHANGE;
ALLSTATE INSURANCE
COMPANY; AND LYFT, INC.                                             APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, LAMBERT, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Kimberly Rogers brings this appeal from an April 3, 2023, judgment of the Fayette Circuit Court granting Lyft, Inc.'s motion for summary judgment, Allstate Insurance Company's motion for summary judgment, and Erie Insurance Exchange's motion for judgment on the pleadings. We affirm.

On February 1, 2022, Kimberly Rogers was a driver for Lyft, Inc. (Lyft) and was involved in an automobile accident with another motor vehicle. Rogers apparently suffered substantial physical injuries. The driver of the other motor vehicle negligently caused the accident and was insured by State Farm Automobile Insurance Company (State Farm). State Farm paid Rogers the policy's liability coverage limits. At the time of the accident, Rogers' vehicle was insured by Erie Insurance Exchange (Erie), and Lyft carried motor vehicle insurance with Allstate Insurance Company (Allstate). Both Erie and Allstate denied Rogers' claims for underinsured motorist (UIM) benefits.

As a result, Rogers filed a complaint in the Fayette Circuit Court against Erie, Allstate, and Lyft. In the complaint, Rogers asserted:

## **FACTS**

14. Defendant Lyft is required by 601 KAR [Kentucky Administrative Regulations] 1:113 § 3(1) to maintain primary automobile insurance that provides coverage bother [sic] for a driver who is logged into the Lyft application AND for drivers engaged in a prearranged ride.

15. Defendant Lyft is also required by 601 KAR 1:113 § 3(2) to maintain liability insurance, PIP [Personal Injury Protection] coverage, UM [Uninsured Motorist] coverage and UIM coverage for drivers who are logged into the Lyft application, who are not engaged in a prearranged ride.

16. Defendant Allstate insures Lyft under a policy of insurance that Defendant Allstate represents only

-2-

provides the coverage required by KRS [Kentucky Revised Statutes] § 281.655(12) as a prearranged ride liability policy, which Allstate contends applies only when Plaintiff was carrying persons for Defendant Lyft.

17. Defendant Lyft either failed to maintain a policy that provided coverage for Plaintiff as required by KRS § 281.655(12) and 601 KAR 1:113 § 3, or Allstate misrepresented the scope of coverage afforded by its policy.

18. Defendant Erie insures Plaintiff under a policy which it contends excludes UIM coverage for all transportation network company activities, whether as part of a pre-trip liability policy or prearranged ride liability policy.

. . . .

## COUNT I
### KRS § 446.070
### VIOLATION OF KRS § 281.655
### Defendant Lyft

. . . .

23. Defendant Lyft was required by KRS § 281.655 to maintain primary automobile insurance that complies with the requirements of 601 KAR 1:113 § 3.

24. Pursuant to the aforementioned statutes and regulations Defendant Lyft was required to maintain UIM insurance in the amount of $50,000 per person, $100,000 per accident.

25. Defendant Lyft has violated the aforementioned laws and regulations by failing to procure insurance of any kind that provided UIM coverage during the time period in which she was logged

-3-

into Defendant Lyft's application but was not engaged in the active transportation of a passenger.

. . . .

## COUNT II
## NEGLIGENCE PER SE
### Defendant Lyft

. . . .

28. Defendant Lyft had a statutory duty to maintain UIM insurance to cover Plaintiff while she was logged into the Lyft application, even when not engaged in providing prearranged rides to Lyft customers.

29. Defendant Lyft breached this statutory duty when it failed to verify that primary insurance providing the required minimum insurance coverage to the Plaintiff was in place, either through Defendant Allstate or Defendant Erie.

. . . .

## COUNT III
## UIM
### Defendants Allstate and Erie

. . . .

34. To the extent that Defendant Allstate is contractually obligated to provide UIM coverage to Lyft drivers engaged in Lyft operations in the Commonwealth of Kentucky, and to the extent that Plaintiff was engaged in Lyft operations in the Commonwealth of Kentucky, Defendant Allstate is required to provide UIM coverage to the Plaintiff in an amount of at least $50,000.

35. To the extent that it is determined that Plaintiff was not engaged in Defendant Lyft's operations at the

time of the collision that is the subject hereof, Defendant Erie is required to provide UIM coverage to Plaintiff, not to exceed the limits of Plaintiff's policy with Defendant Erie.

August 31, 2022, Complaint at 3-7.

Lyft, Erie, and Allstate filed Answers. Eventually, Erie filed a motion for judgment on the pleadings under Kentucky Rules of Civil Procedure (CR) 12.02 and CR 12.03. Erie pointed out that at the time of the accident, Rogers was logged into Lyft's mobile application. Under its insurance policy covering Rogers' motor vehicle, Erie argued that UIM coverage was specifically excluded when a motor vehicle was available for hire by the public. At the time of the accident, Erie maintained that Rogers' motor vehicle was available for hire by the public; thus, UIM coverage was excluded under the clear policy provision. As UIM coverage was excluded under its insurance policy, Erie sought dismissal of Rogers' claim for UIM coverage. In her response, Rogers argued Erie was required to provide UIM coverage as mandated per 601 KAR 1:113 Section 3.

Thereafter, Allstate filed a motion for summary judgment. Allstate admitted it had issued Lyft a business automobile insurance policy that was in effect at the time of Rogers' accident. However, Allstate maintained that Lyft rejected UIM coverage, and as a result, the insurance policy did not provide UIM coverage. Consequently, Allstate sought summary judgment dismissing the claim for UIM coverage.

Lyft also filed a motion for summary judgment. Lyft stated that it obtained automobile insurance coverage from Allstate in compliance with KRS 281.655 and 601 KAR 1:113. Lyft argued that neither KRS 281.655 nor 601 KAR 1:113 required it to obtain UIM coverage. Rather, Lyft maintained that UIM coverage was optional per KRS 304.39-320(2).

Rogers filed a combined response to Allstate's motion for summary judgment and Lyft's motion for summary judgment. Rogers attached her affidavit to the response. In the affidavit, Rogers stated that at the time of the accident, she was logged onto the "Lyft Application, . . . had accepted a ride, and was on my way to pick up a passenger for Lyft." Rogers' Affidavit at 1. According to Rogers, 601 KAR 1:113 Section 3(1) mandated that Lyft maintain the primary insurance for the automobile when the driver was either logged onto its mobile application or engaged in a prearranged ride. At the time of the accident, Rogers argued that she was engaged in a prearranged ride per KRS 281.010(42).[1] When engaged in a prearranged ride, Rogers believed that 601 KAR 1:113 Section 3(4) mandated that Lyft provide UIM coverage. Rogers also argued that Lyft failed to provide UIM coverage and, thus, committed the "tort of no insurance." Rogers' response to Allstate's and Lyft's motions for summary judgment at 7.

---

[1] Kentucky Revised Statutes (KRS) 281.010 was amended effective January 1, 2023, and the provisions therein were renumbered. This Opinion references the statute in effect on the date of the accident in February of 2022.

By judgment entered April 3, 2023, the Fayette Circuit Court granted Erie's motion for judgment on the pleadings, Allstate's motion for summary judgment, and Lyft's motion for summary judgment. The judgment contained no legal reasoning or analysis. This appeal follows.

Summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. *Isaacs v. Sentinel Ins. Co. Ltd.*, 607 S.W.3d 678, 680 (Ky. 2020). As no fact-finding is involved in a summary judgment, our review is *de novo*. *Id.* at 681 (quoting *3D Enters. Cont. Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005)).

Rogers initially contends that the circuit court erroneously granted Lyft's motion for summary judgment. Rogers argues that 601 KAR 1:113 Section 3(1) mandates that Lyft provide primary automobile insurance when a Lyft driver is logged onto the Lyft application or engaged in a prearranged ride. Rogers asserts that at the time of the accident she was engaged in a prearranged ride within the meaning of KRS 281.010(42). As she was engaged in a prearranged ride at the time of the accident, Rogers argues that 601 KAR 1:113 Section 4 requires Lyft to obtain UIM coverage for her motor vehicle. Rogers maintains that the circuit court misinterpreted 601 KAR 1:113 and committed an error of law by so doing.

The relevant statutory and regulatory provisions are as follows. 601

KAR 1:113 Section 3 provides, in part:

> (1) A TNC[2] shall maintain primary automobile insurance that:
>
> (a) Recognizes that a driver is a TNC driver or using a vehicle to transport passengers for compensation; and
>
> (b) Provides insurance coverage for a TNC driver who is:
>
>> 1. Logged on to the TNCs mobile application; or
>>
>> 2. Engaged in a prearranged ride.
>
> . . . .
>
> (4) The following automobile insurance requirements shall apply while a TNC driver is engaged in a prearranged ride:
>
> (a) Primary automobile liability insurance in the minimum amounts required by KRS 281.655(4);
>
> (b) Basic reparation benefits in accordance with KRS 304.39-020;
>
> (c) Uninsured vehicle coverage in accordance with KRS 304.20-020; and
>
> (d) Underinsured vehicle coverage in accordance with KRS 304.39-320.

601 KAR 1:113 Section 3(1) and (4). KRS 281.010(60) defines a TNC as:

---

[2] TNC stands for "Transportation Network Company." KRS 281.010(60).

(60) "Transportation network company" or "TNC" means a person or entity that connects passengers through its digital network or mobile application to its drivers for the provision of transportation network company services[.][3]

And, KRS 281.010(42) defines a prearranged ride as:

(42) "Prearranged ride" means the period of time that begins when a transportation network company driver accepts a requested ride through a digital network or mobile application, continues while the driver transports the rider in a personal vehicle, and ends when the transportation network company services end[.][4]

Lastly, KRS 304.39-320 reads, in part:

(1) As used in this section, "underinsured motorist" means a party with motor vehicle liability insurance coverage in an amount less than a judgment recovered against that party for damages on account of injury due to a motor vehicle accident.

(2) Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering.

---

[3] The definition of "Transportation Network Company" is currently found at KRS 281.010(67).

[4] This definition of "Prearranged Ride" is currently found at KRS 281.010(46).

We begin our analysis with the definitions set forth in KRS 281.010(60) and KRS 281.010(42). Under KRS 281.010(60), a transportation network company (TNC) is an entity that uses a digital network or mobile application to connect its drivers to passengers. It is undisputed that Lyft is a TNC within the meaning of KRS 281.010(60). And, a prearranged ride is defined as beginning when a TNC driver accepts a requested ride via a mobile application and continues through transportation of the rider per KRS 281.010(42). In her affidavit, Rogers averred that at the time of the accident she was logged onto the Lyft application, had accepted a ride, and was en route to pick up the passenger. So, viewing the facts most favorable to Rogers, Rogers was engaged in a prearranged ride at the time of the accident per KRS 281.010(42).

The terms of 601 KAR 1:113 are clear and unambiguous. It requires the TNC to maintain primary automobile insurance that provides coverage when the TNC driver is either logged onto the mobile application or engaged in a prearranged ride. When a TNC driver is engaged in a prearranged ride, 601 KAR 1:113 Section 3(4)(d) requirements are triggered. It plainly requires "[u]nderinsured vehicle coverage in accordance with KRS 304.39-320." So, UIM coverage must be maintained in compliance with KRS 304.39-320. Under the clear terms of KRS 304.39-320, UIM coverage is not compulsory and is only mandated upon the request of the insured. *See Philadelphia Indem. Ins. Co., Inc. v.*

-10-

*Tryon*, 502 S.W.3d 585, 588 (Ky. 2016). Reading 601 KAR 1:113 Section 3(4) and KRS 304.39-320 together, it is clear that UIM coverage must only be made available upon request and is not otherwise compulsory insurance coverage during a prearranged ride. In this case, Lyft did not request UIM coverage and was not required to provide UIM coverage for Rogers at the time of the accident.[5]

Rogers next asserts that the UIM exclusion contained in her own motor vehicle insurance policy issued by Erie is unenforceable. Rogers points out that she purchased motor vehicle insurance from Erie that included UIM coverage. According to Rogers, Erie denied her claim for UIM coverage based upon an exclusion in the policy. However, Rogers maintains that the exclusion is ambiguous:

> The first issue with the language of the policy is that it purports to exclude UIM coverage "while hired by or rented to others for a fee, or while available for hire by the public." Ms. Rogers was not engaged in a rental of her vehicle for fee. There was no circumstance where a stranger to the policy would be authorized to drive the insured auto. As a driver for TNC she was providing her services as a driver only to users of the Lyft app. Ms. Rogers was not available for hire by the general public. It is not the case that any individual could hail Ms.

---

[5] Kimberly Rogers also cites to 601 Kentucky Administrative Regulations (KAR) 1:113 Section 3(5) to support her argument that Lyft, Inc., was required to provide underinsured motorist coverage at the time of the accident. However, by its own terms, 601 KAR 1:113 Section 3(5) only applies to "prearranged ride liability insurance coverage requirements," not underinsured motorist coverage. And, 601 KAR 1:113 Section 4(1)(c) clearly provides that insurers in Kentucky may exclude underinsured motorist coverage under a TNC driver's insurance policy while a TNC driver is logged on to a TNC's mobile application or while a TNC driver is providing a prearranged ride.

Rogers' services like a taxicab. The act of prearranging the ride via the Lyft app does not confer to Ms. Rogers the status of being for hire by the public. . . .

[T]here is an exception to the exclusion that gives back coverage if an owned auto is used to drive for Lyft if the declarations page identifies the auto for business use. The declarations page of this policy lists the use as "To work 10-14" and does not specify that the coverage is limited to personal use or that it does not include business use. Neither term business use or personal use is used. Ms. Rogers' reasonable expectation that "to work" includes to work for Lyft as a driver. Therefore, because the declarations page does not plainly and unambiguously define the use of the owned auto, the exception to the exclusion should be triggered. . . .

[T]he use of TNC and the definition provided in the policy are not clear and unambiguous. Of course, TNC is a statutorily defined term that has significant technical and legal meaning. However, TNC is not the common term used by the public when discussing rideshare providers such as Uber and Lyft. There is no common usage of the term "transportation network company." The term cannot be found in Merriam Webster's. Lyft does not refer to itself as a TNC; it considers itself a rideshare company. Further, the policy's definition does not make it any clearer that the exclusion applies to driving for Lyft or Uber. Nowhere in the definition is the common term "rideshare" used. The use of the term "digital platform" as opposed to mobile application creates an ambiguity that cannot be reconciled with the remainder of the definition. Therefore, the use of these terms does not make the exclusion clearly applicable to driving for Lyft.

Appellant's Brief at 17-19 (footnote omitted). Arguing that the UIM exclusion

contained in her insurance policy is ambiguous, Rogers asserts that her reasonable

-12-

expectation of UIM coverage prevails, and Erie is required to extend UIM coverage.

Erie filed a motion for judgment on the pleadings under CR 12.03, and the circuit court granted the motion. However, pursuant to CR 12.03, the circuit court "shall" consider the motion as a motion for summary judgment if "matters outside the pleadings are presented." In this case, the record reveals that matters outside the pleadings were presented; consequently, we shall review the judgment as a summary judgment.

It is well-settled that UIM coverage is not statutorily mandated coverage; rather, "[i]nsurers are required to make UIM coverage 'available *upon request*[.]'" *Tryon*, 502 S.W.3d at 588 (quoting KRS 304.39-320(2)). Moreover, "UIM coverage exclusions are not impermissible under Kentucky public policy and parties are at liberty to negotiate and customize policies to fit their own needs and desired levels of coverage." *Id.* at 592. Furthermore, the reasonable expectation of coverage is "satisfied so long as the plain meanings of the terms of the underlying [policy] are clear and unambiguous." *Id.* at 592. Thus, an insured is not entitled to UIM coverage if the exclusion is clear and unambiguous. *Id.* at 593. It is only when a UIM coverage exclusion is ambiguous and unclear that the insured's reasonable expectation of coverage defeats the UIM exclusion and coverage is extended to the insured. *Id.* at 593-94.

-13-

In Rogers' insurance policy, the UIM coverage exclusion provided, in relevant part:

### EXCLUSIONS – What We Do Not Cover

This insurance does not apply to:

1. bodily injury sustained by anyone while "**occupying**" or using any "**auto we insure**" while hired by or rented to others for a fee, or while available for hire by the public. "**We**" will protect "**you**" or a "**relative**" while "**occupying**," but not driving, such a vehicle if it is a "**nonowned auto**."

   Fee does not include payment received in a car pool or for trips for nonprofit social, educational or charitable agencies.

   *If an "**owned auto we insure**" or a "**temporary substitute**" for that "**owned auto we insure**" is:*

   *a. identified for Business use as indicated on the "**Declarations**;" and*
   *b. used by "**you**" or a "**relative**" as a transportation network company (TNC) partner,*

   *Exclusion 1. does not apply for that vehicle. For purposes of this exception, coverage will be excess over any other collectible insurance.*

   *A transportation network company (TNC) is one that provides transportation for passengers or goods:*

   *a. on a prearranged basis; and*
   *b. only by means of a digital platform that enables the passengers or customers to connect with TNC partners using a TNC partner vehicle.*

-14-

> *A TNC partner is one who transports passengers or goods, but only for passengers or for those customers that the TNC matched with the partner through the digital platform.*

Erie Private Passenger Policy at 2.

The UIM exclusion is plain and unambiguous. It clearly provides that UIM coverage does not apply when an insured's vehicle is hired, rented, or available for hire by the public. The common definition of "hire" is to engage the services of a person for a fee or to engage the temporary use of a thing for a fee. THE AMERICAN HERITAGE DICTIONARY (2nd ed. 1976). According to Rogers, she had accepted a request for a ride on the Lyft application and was en route to pick up the passenger when the accident occurred. Therefore, Rogers' vehicle was hired by the passenger at the time of the accident, and the UIM exclusion was clearly applicable. Thus, under the plain terms of the UIM exclusion, Rogers could not have reasonably expected UIM coverage at the time of the accident.

We also reject Rogers' contention that an ambiguity exists as to the exception to the UIM exclusion contained in the policy. Under its plain terms, the exception is triggered only if the automobile was "identified for Business use as indicated on the 'Declarations.'" Rogers seizes upon the language on the declaration page that identified the use of her vehicle as "To work 10-14." However, "To work" is commonly utilized to indicate that the insured drives the motor vehicle to and from work. Additionally, at oral arguments before the circuit

-15-

court, Rogers agreed that her vehicle was not rated for business use as required under the exception to the UIM exclusion. Accordingly, we conclude that Rogers was not entitled to UIM coverage under her policy of insurance.

Rogers additionally asserts that public policy requires Lyft and/or Erie to provide UIM coverage. We disagree.

Generally, as previously noted, UIM exclusions in motor vehicle insurance policies do not offend the public policy of this Commonwealth. *Tryon*, 502 S.W.3d at 592. UIM coverage is only required insurance coverage when the insured requests such coverage. Additionally, the General Assembly could have mandated that UIM coverage be compulsory as to TNC drivers but has declined to do so. The lack of UIM coverage can be easily remedied by an insured, such as Rogers. The insured simply may disclose the business use of her motor vehicle and request UIM coverage rated for such use.

We view any remaining contentions of error as moot or without merit.

In sum, we conclude that the circuit court properly rendered summary judgment in favor of Lyft, Allstate, and Erie. Accordingly, the judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.

-16-

BRIEFS FOR APPELLANT:

J. Dale Golden
Cody P. McIlvoy
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

J. Dale Golden
Lexington, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE ERIE INSURANCE
EXCHANGE:

Darrin W. Banks
Paintsville, Kentucky

BRIEF FOR APPELLEE ALLSTATE
INSURANCE COMPANY:

Timothy P. Heather
Cincinnati, Ohio

ORAL ARGUMENT FOR
APPELLEE ALLSTATE
INSURANCE COMPANY:

Anthony Iaciofano
Cincinnati, Ohio

BRIEF AND ORAL ARGUMENT
FOR APPELLEE LYFT, INC.:

Patrick B. Healy
Cincinnati, Ohio